[Cite as *State v. Protsman*, 2018-Ohio-3927.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 28778 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NORMAN PROTSMAN | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 16 TRC10132 |

DECISION AND JOURNAL ENTRY

Dated: September 28, 2018

CARR, Judge.

{¶1} Appellant, Norman Protsman, appeals the judgment of the Akron Municipal Court. This Court affirms.

I.

{¶2} This matter arises out of a traffic stop that occurred in the early morning hours of June 5, 2016. Mogadore police initiated a stop of Protsman's vehicle after observing him swerve left of center. The officer who initiated the stop observed numerous indications that Protsman was under the influence of alcohol. The officer also administered a series of field sobriety tests. Protsman's performance on those tests further supported the officer's belief that Protsman was intoxicated. The officer placed Protsman under arrest and he was taken to the police station where police administered a breathalyzer test.

{¶3} Protsman was charged with operating a vehicle while under the influence of alcohol, operating a vehicle with a prohibited blood alcohol concentration, and driving left of the

center line. Protsman filed a motion to suppress, arguing that all of the evidence from the traffic stop should be suppressed because the officer failed to properly administer the field sobriety tests. After holding a hearing on the motion to suppress, the trial court issued a journal entry denying the motion. Thereafter, Protsman pleaded no contest to operating a vehicle with a prohibited BAC level. The trial court found him guilty of that charge and the remaining two charges were dismissed. The trial court imposed a fine and a 180-day jail sentence, 177 days of which were suspended. The trial court ordered Protsman to serve three days in a driver intervention program and complete a Summit Link Evaluation and follow any related recommendations.

{¶4} Protsman's initial attempt to appeal was dismissed by this Court on procedural grounds. On October 19, 2017, this Court granted Protsman's motion for a delayed appeal. Now before this Court, Protsman raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

> THIS COURT SHOULD REVERSE THE TRIAL COURT'S DENIAL OF THE APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE, OPINIONS AND OBSERVATIONS OF THE LAW ENFORCEMENT OFFICER BECAUSE THE FIELD SOBRIETY TESTS WERE NOT CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE STANDARDS PROMULGATED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION.

{¶5} In his sole assignment of error, Protsman contends that the trial court erred by denying his motion to suppress. This Court disagrees.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio

St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

## Background

{¶7} Officer Johnny Slayton of the Mogadore Police Department was the sole witness to testify on behalf of the State at the suppression hearing. During his shift on the evening in question, Officer Slayton received a message from dispatch that a clerk at a nearby Speedway had observed a potentially impaired driver. The clerk relayed a description of the driver's vehicle and noted that the driver had just left the gas station. Officer Slayton noticed the vehicle as it passed the parking lot where he was sitting in his cruiser. When he began to follow the vehicle, he noticed the vehicle go left of center. Officer Slayton initiated a traffic stop.

{¶8} Upon approaching the vehicle, Officer Slayton smelled a strong odor of alcohol. Officer Slayton introduced himself to Protsman, who was the driver of the vehicle. Officer Slayton noticed that Protsman's eyes were red, bloodshot, and watery. Officer Slayton further observed that Protsman's speech was slurred. Officer Slayton returned to his cruiser briefly to verify Protsman's information. The odor of alcohol remained present as Officer Slayton approached the vehicle a second time. Protsman admitted that he was coming from a concert where he had been drinking beer.

{¶9} Officer Slayton asked Protsman to step out of his vehicle and perform a series of field sobriety tests. Officer Slayton testified that he received training in the administration of field sobriety tests that were validated by the National Highway Traffic Safety Administration.

Officer Slayton administered the horizontal gaze nystagmus test, the one leg stand test, and the walk and turn test. A portion of the body camera video that showed Officer Slayton administering the tests was introduced at the hearing. During the HGN test, Officer Slayton observed six clues that suggested Protsman was intoxicated. Protsman subsequently failed both the one leg stand and walk and turn tests due to the fact that he was unable to perform them. Officer Slayton testified that he was concerned that Protsman might fall over during the administration of both tests and that the signs of impairment were "pretty obvious[.]" Officer Slayton believed that Protsman was operating his vehicle under the influence of alcohol and he placed Protsman under arrest. Protsman was taken to the police station where he took a breathalyzer test.

{¶10} On cross-examination, Officer Slayton noted that he "[does not] really focus on the scores" when administering the field sobriety tests. Instead, Officer Slayton explained that he looks at "the totality" of what has transpired before making a decision on whether to arrest. Officer Slayton acknowledged, however, that he was aware that field sobriety tests must be administered in substantial compliance with NHTSA manual in order for the results to be admissible.

{¶11} In his motion to suppress, Protsman argued, among other things, that the trial court should "suppress all evidence, opinions and observations of the officer because the field sobriety tests were not conducted in substantial compliance with the standards promulgated by the National Highway Traffic Safety Administration." During closing arguments, Protsman argued that his challenge to the field sobriety tests also impacted the admissibility of the

breathalyzer test.[1] Protsman reasoned that, absent the field sobriety test results, the officer had no basis to arrest Protsman and take him to the police station where the breathalyzer test was administered.

{¶12} In its January 23, 2018 journal entry denying the motion to suppress, the trial court stressed that the parties stipulated that the sole issue before the court was whether Officer Slayton performed the field sobriety tests in substantial compliance with the NHTSA guidelines. While the trial court acknowledged that portions of Officer Slayton's testimony relating to the administration of the HGN test were "questionable[,]" the trial court found that any concerns were alleviated upon review of the video. The trial court ultimately concluded that the State provided clear and convincing evidence Officer Slayton performed the tests in substantial compliance with standardized procedures. Though the trial court repeatedly noted the limited scope of the hearing, it further stated that in light of its conclusion that the field sobriety tests were administered lawfully, the breathalyzer argument that Protsman attempted to raise during closing arguments was also without merit.

## Discussion

{¶13} On appeal, Protsman argues that "all evidence, opinions and observations of the law enforcement officer" should have been suppressed because the officer failed to conduct the field sobriety tests in substantial compliance with the standards set forth by the NHTSA. Protsman emphasizes that Officer Slayton made multiple mistakes while administering the HGN

---

[1] Protsman raised numerous issues in his motion to suppress. At the outset of the suppression hearing, however, the parties stipulated that the sole issue before the trial court was whether the field sobriety tests were administered in substantial compliance with standardized procedures.

test and further notes that Officer Slayton failed to inquire whether Protsman was medically capable of performing the one leg stand and walk and turn tests. In support of this position, Protsman further contends that the NHTSA standards make clear that anything less than strict compliance compromises the validity of the testing and prejudices the defendant. Protsman points to the Supreme Court of Ohio's decision in *State v. Homan*, 89 Ohio St.3d 421 (2000) in support of the proposition that the only meaningful way to ensure field sobriety tests are reliable is to enforce the strict compliance standard.

{¶14} Protsman's strict compliance argument is without merit. The Supreme Court's decision in *Homan* was issued in 2000. Thereafter, the General Assembly amended R.C. 4511.19(D)(4)(b) to adopt a substantial compliance standard. *See State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 11-15. The Supreme Court subsequently held that "R.C. 4511.19(D)(4)(b), which provides that the results of field sobriety tests are admissible if the tests are administered in substantial compliance with testing standards, is constitutional." *Boczar* at syllabus; *see also State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, ¶ 11 ("[T]he results of the field sobriety tests are not admissible at trial unless the state shows by clear and convincing evidence that the officer administered the test in substantial compliance with NHTSA guidelines."). It follows that Officer Slayton was not required to administer the field sobriety tests in strict compliance with standardized procedures in order for the results to be admissible.

{¶15} Moreover, even assuming arguendo that there are questions surrounding whether the field sobriety tests in this case were administered in substantial compliance with the NHTSA standards, Protsman has not demonstrated that he was prejudiced. Contrary to Protsman's position on appeal, an officer's failure to administer the field sobriety tests in substantial compliance with the NHTSA standards does not mandate that "all evidence" from the traffic stop

must be suppressed. *See State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 11. Instead, in cases where courts are faced with the question of whether a police officer has probable cause to arrest an individual for operating a vehicle while under the influence, the totality of the circumstances can support a finding of probable cause to arrest even where field sobriety test results must be excluded. *State v. Washington*, 9th Dist. Lorain No. 11CA010042, 2012-Ohio-1391, ¶ 10, citing *Homan* at 427. Officer Slayton testified at the suppression hearing that his decision to arrest was based on the totality of the circumstances. In this case, a gas station clerk informed police that Protsman might be driving while impaired. Soon thereafter, Officer Slayton observed Protsman drive left of center. During the course of the ensuing traffic stop, Officer Slayton smelled the strong odor of alcohol coming from Protsman's vehicle and Protsman admitted that he had been drinking at a concert. Protsman slurred his speech during his conversation with Officer Slayton. The officer further observed that Protsman's eyes were red, bloodshot, and watery. Officer Slayton noticed that Protsman was stumbling during the administration of the walk-and-turn and one-leg-stand tests. *See Schmitt* at ¶ 15 (noting that an officer may testify regarding his lay observations made during the administration of the non-scientific field sobriety tests, regardless of whether the test results are deemed admissible). Thus, even setting aside the field sobriety test results, a consideration of the totality of the circumstances supports the conclusion that probable cause existed to place Protsman under arrest for operating a vehicle while under the influence.

{¶16} The assignment of error is overruled.

### III.

{¶17} Protsman's assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JONATHAN T. SINN, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, GERTRUDE E. WILMS, Chief Prosecutor, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.